UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR GILBERTO PATINO,<br><br>    Petitioner,<br><br>    v.<br><br>CRAIG KOENIG,<br><br>    Respondent. | Case No. 19-cv-04462-WHO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

Petitioner Oscar Gilberto Patino seeks federal habeas relief from his state convictions on grounds that: (i) the admission of Miriam Wolf's expert testimony regarding Child Sexual Abuse Accommodation Syndrome ("CSAAS") was a violation of his due process right to a fair trial; and (ii) in the alternative, if the court finds that trial counsel did not properly preserve the objections to the CSAAS evidence, then counsel provided ineffective assistance in violation of his Sixth and Fourteenth Amendment rights. As to the first claim, the California Court of Appeal clearly and expressly stated that its decision rests on a state procedural bar, and procedural default is appropriate because Patino failed to make a contemporaneous objection to the CSAAS testimony and the contemporaneous objection rule in California is independent and adequate. The state court's alternative decision on the merits was also well-reasoned and entitled to deference. His second claim fails because he did not exhaust his state court remedies, and it is meritless in any event. For these reasons, Patino's petition for habeas relief is DENIED.

**BACKGROUND**

In 2015, a jury in San Mateo County Superior Court convicted Patino of eight counts of committing lewd or lascivious acts on a child under the age of fourteen, and two counts of committing oral copulation or sexual penetration with a child ten years of age or younger. Petition

for Writ of Habeas Corpus ("Pet.") [Dkt. No. 1] 8; 1 Clerk's Transcript ("CT") 199–220; 4 Reporter's Transcript ("RT") 850–860.[1]

He received a sentence of sixty years to life in prison. 2 CT 490–494; 5 RT 876–877, 879. His efforts to overturn his conviction in state court were unsuccessful. *People v. Patino*, No. A147623, 2018 WL 1100759, at *1 (Cal. Ct. App. Mar. 1, 2018), *review denied* (May 9, 2018). This federal habeas petition followed.

The victims of these crimes were children who attended the daycare owned by Patino's wife, which was operated out of their home: Genesis Doe ("G.D."), Amaya Doe ("A.D."), and Emma Doe ("E.D."). 2 RT 228, 279. A.D. described her molestations to forensic interviewer Miriam Wolf. A recording of the interview was played for the jury at trial. 1 RT 141–42. Wolf testified as an expert in CSAAS and forensic interviewing. 2 RT 152.

As explained in the state-court record, CSAAS describes various emotional stages experienced by sexually abused children that may explain their sometimes piecemeal and contradictory manner of disclosing abuse. Under the CSAAS analysis, inconsistencies in a child's accounts of abuse do not necessarily mean that the child is lying. The child could be telling different parts of what happened to different adults, based on the child's comfort level with each adult or on the developmental immaturity of the child's memory.

The California Court of Appeal summarized the factual background regarding Wolf's CSAAS testimony as follows:

> The issue of CSAAS testimony first arose in one of the prosecution's in limine motions. The object of the motion was described as follows: 'The victims in the present case did not promptly disclose the sexual abuse by the Defendant. A reasonable juror might tend to believe the molestation did not actually occur since they did not disclose immediately. These are all common misconceptions. [¶] The People intend to call Miriam Wolf and/or Anthony Urquiza as an expert on Child Sexual Abuse Accommodation Syndrome. He/She will explain why sex assault victims, in particular child victims, may react to sex crimes in ways which may appear inconsistent with actual victimization to lay people with little or no knowledge of common

---

[1] The CT has been lodged concurrently with the Answer as Exhibits 1A–1B, the Augmented CT ("ACT") as Exhibits 2–4, the RT as Exhibits 5A–5F, and the Augmented RT ("ART") as Exhibits 6A–6B. *See* Notice of Electronic Lodging and Index of Exhibits. The number preceding CT or RT refers to the volume number, and the number following CT or RT refers to the page number.

> child reactions to molest[ation]. In short, [he/]she will disabuse the jury of common misconceptions of child molest victims. He/she will not opine that she believes the victims were actually molested in this case.'
>
> Defendant opposed the motion because 'expert testimony on this issue is no longer needed. It is no longer a myth or misconception that people who are victims of sexual assault report immediately.' The trial court granted the prosecution's motion. After being accepted as an expert on CSAAS, without objection from the defense, Ms. Wolf, a licensed clinical social worker, initially testified about the syndrome in very general terms. The only thing approaching a specific was that the syndrome had five "categories' or 'clusters' of 'patterns of behavior.' Before her direct examination began, the court admonished her: 'Ms. Wolf, under the law you can only testify generally as to CSAAS. What I mean by that is please don't do anything connected with this case.'
>
> The prosecutor asked: 'Is it common for a child . . . to not tell anyone for a long time that they have been abused?' Ms. Wolf answered: 'It's quite common.' She explained that 'not all children disclose during childhood. Many people go into adulthood without disclosing childhood sexual abuse. Of those that do, the research is quite clear that there is this delay. So, when children do report sexual abuse, it is delayed and it is often conflicted.' A major factor is the child's fear: 'it may be fear of the perpetrator, but also fear of people's reactions,' and possibly fear of being diagnosed with a sexually transmitted disease. By contrast, 'when we hear about sexual abuse, we look at it through our adult prism and everything that we know about sexuality,' but 'often . . . kids . . . don't have an appreciation for [the] sexual nature of what has happened.' The whole point of CSAAS is 'to help adults to think about this from a child's perspective.' Ms. Wolf agreed that CSAAS 'is not going to tell you whether or not someone was molested.'

Answer to Petition for Writ of Habeas Corpus ("Answer") [Dkt. No. 23] Ex. 10 (Opinion of California Court of Appeal) at 2–3; *Patino*, 2018 WL 1100759, at *1–2

## LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### I. ADMISSION OF TESTIMONY REGARDING CSAAS

Patino alleges that he was deprived of his due process right to a fair trial when the trial court admitted Wolf's testimony addressing CSAAS. Pet. 16. Respondent argues that this claim is procedurally defaulted and meritless.

#### A. Procedural Default

Federal habeas relief is not available if a claim is procedurally defaulted, that is, if a state denied claims because a petitioner failed to comply with the state's requirements for presenting claims. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). The state's grounds for denying the claim "must be independent of the federal question and adequate to support the judgment." *Id.* at 729. A state procedural bar is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. U.S. Dist. Ct. (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). The state carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th

4

Cir. 2003).

Respondent contends that the first claim is procedurally defaulted on federal habeas because the state court imposed a valid state procedural bar to Patino's federal constitutional claim. Answer 17. The California Court of Appeal observed that, at trial, Patino opposed the admission of the CSAAS evidence as unnecessary because it was "no longer a myth or misconception that people who are victims of sexual assault report immediately." *Patino*, 2018 WL 1100759, at *1. However, on appeal, Patino objected to the admission of the evidence as a violation of his Fourteenth Amendment rights. Answer, Ex. 7 (Appellant's Opening Brief) at 32. The court found that the Fourteenth Amendment claim was not preserved for appeal, based on Patino's failure to object on the same grounds at trial. *Patino*, 2018 WL 1100759, at *2 ("This point was not preserved for review because it was not made the basis for a specific and timely objection to the trial court.") (citing Cal. Evid. Code § 353(a) and *People v. Abel*, 53 Cal.4th 891, 924 (2012)). The California Supreme Court summarily denied Patino's petition for review on this claim. Respondent argues that by silently denying Patino's Fourteenth Amendment claim, the California Supreme Court adopted the procedural bar imposed by the California Court of Appeal. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal court 'looks though' the silent decision for a specific and narrow purpose, to identify the grounds for the higher court's decision as the [AEDPA] requires.").

It is well-established that California's contemporaneous objection requirement is independent of federal law. California law has long required a defendant to make a timely and specific objection at trial in order to preserve a claim for appellate review. *See* Cal. Evid. Code §353(a) (objection to the admission of evidence must be "timely made and so stated as to make clear the specific ground of the objection or motion"); *Abel*, 53 Cal. 4th at 924 (an appellate court's review of the admission of evidence is limited to the stated ground of objection in the trial court; a party may not argue on appeal that the court should have excluded the evidence for a reason different from the one stated at trial); *People v. Ramos*, 15 Cal. 4th 1133, 1172 (1997) (defendant for the first time on appeal argued introduction of evidence violated his Eighth Amendment rights; he did not object on that basis at trial and failed to preserve the issue).

5

1  The United States Supreme Court has acknowledged that a state court's application of the contemporaneous objection rule may constitute grounds for default. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (failure to object to confession); *Ylst v. Nunnemaker*, 501 U.S. 797, 799, 806 (1991) (failure to object to confession on *Miranda* grounds). The Ninth Circuit has also confirmed that the contemporaneous rule is independent and has honored defaults for failure to comply with the rule. *See Vansickel v. White*, 166 F.3d 953, 957–58 (9th Cir. 1999); *Bonin v. Calderon*, 59 F.3d 815, 842–43 (9th Cir. 1995); *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1981).

Accordingly, respondent has met its burden to adequately plead the existence of a valid state procedural bar. To overcome a claim of procedural default, Patino must establish either: (1) cause for the default, and prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Patino has not done so. In fact, he does not address the procedural default argument in either his petition or his traverse. To the extent that his alternative ineffective assistance counsel ("IAC") claim can be construed as an argument to overcome procedural default, it is unpersuasive.

"[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) ("The fact that [counsel] did not present an available claim or that he chose to pursue other claims does not establish cause."). Moreover, as discussed below, "if [Patino] could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available." *Carrier*, 477 U.S. at 489.

As the Supreme Court has held, "[t]he principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, [citation

6

1  omitted], and that holds true whether an ineffective assistance claim is asserted as cause for a
2  procedural default or denominated as an independent ground for habeas relief." *Carrier*, 477 U.S.
3  at 489. Patino fails to show that IAC may establish cause for a procedurally defaulted claim based
4  on admission of evidence, as opposed to a procedurally defaulted claim based on IAC itself. *See*
5  *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) ("Inadequate assistance of counsel at initial-review
6  collateral proceedings may establish cause for a prisoner's procedural default of a claim of
7  ineffective assistance at trial.").

8  Accordingly, I find that the California Court of Appeal applied an independent and
9  adequate state procedural rule and this claim is procedurally defaulted. In any case, as set forth
10 below, I find that this claim is without merit. *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir.
11 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state
12 court simultaneously rejects the merits of the claim.").

13 **B.  Merits**

14 The California Court of Appeal found that even if Patino preserved his Fourteenth
15 Amendment challenge to the CSAAS evidence, it would fail. *Patino*, 2018 WL 1100759, at *2.
16 Where the state court alternatively addresses the merits of a procedurally defaulted claim, that
17 merits determination is entitled to deference under AEDPA. *Apelt v. Ryan*, 878 F.3d 800, 825 (9th
18 Cir. 2017) ("[W]hen a state court "double-barrels" its decision—holding that a claim was
19 procedurally barred and denying the claim on its merits—both its procedural default ruling and its
20 merits ruling are entitled to deferential review by federal courts, as intended by AEDPA."). I will
21 "look through" the California Supreme Court's summary denial of the claim as I examine the
22 reasoned opinion of the California Court of Appeals. *Ylst*, 501 U.S. at 806.

23 Patino asserts that "any inference that the jury could make with the CSAAS expert
24 testimony was an unreasonable one: the petitioner's and the complaining witnesses' conduct was
25 in accordance with that of an abuser and the abused, respectively, and therefore the petitioner was
26 guilty of the charged offenses." Pet. 22. He argues that the jury's use of unreasonable inferences
27 to find guilt violated his due process rights under the Fourteenth Amendment. *Id.*

28 The California Court of Appeal rejected Patino's Fourteenth Amendment challenge

7

because "[o]ur Supreme Court has approved admission of CSAAS testimony" and "its use entails no constitutional violation." *Patino*, 2018 WL 1100759, at *2 (citing *People v. McAlpin*, 53 Cal. 3d 1289, 1300 (1991); *People v. Philip Patino*, 26 Cal. App. 4th 1737, 1747 (1994); *Brodit v. Cambra*, 350 F.3d 985, 991 (9th Cir. 2003)). Its rejection of this claim was reasonable. The Ninth Circuit has upheld the use of CSAAS evidence in child abuse cases against due process challenges "when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth." *Brodit*, 350 F.3d at 991. *Brodit* rejected "the contention that CSAAS testimony improperly bolsters the credibility of child witnesses and precludes effective challenges to the truthfulness of their testimony," the same argument raised by Patino.

The jury instructions ensured that the jurors used the CSAAS testimony in a way that was consistent with *Brodit*. 4 RT 731 ("You have heard testimony from Miriam Wolf regarding [CSAAS]. Ms. Wolf's testimony about [CSAAS] is *not evidence that the defendant committed any of the crimes charged against him*. You may consider this evidence only in deciding whether or not the complaining witness's conduct was not inconsistent with the conduct of someone who has been molested in evaluating the believability of her testimony.") (emphasis added)

The testimony was similarly consistent. Wolf was directed by the court, and the prosecutor emphasized during direct examination, that she could only testify generally and not about the specifics of this case. 1 CT 296 (after a sidebar, the court said "Ms. Wolf, under the law you can only testify generally as to CSAAS. What I mean by that is please don't do anything connected with this case."). Throughout Wolf's testimony, including her answers to the prosecutor's hypotheticals, she referred to the literature on CSAAS as the source of her answers, providing no testimony on this specific case. *See, e.g.*, 1 RT 297–98 (referencing the findings of Dr. Summit, the pioneer of CSAAS, on the delays in child disclosures of sexual abuse); 2 CT 301–03 (referencing the CSAAS literature on the percentage of child sexual abusers that are known to the victim and have regular interactions with the victim); 2 CT 308–11 (referencing the CSAAS literature and her own experience when describing why a child victim would not confirm abuse when the report of abuse came from another source), 2 CT 312–13 (referencing the CSAAS literature when describing that "somewhere between two and ten percent of reports" of child

sexual abuse are intentionally fabricated and false).[2] In addressing Patino's concern that the prosecutor's hypotheticals "tracked the facts of this case," the California Court of Appeals found:

> There is no need to spell out all the details. Both questions and answers were general and nonspecific (e.g., 'Have you ever had an experience,' 'do you have any experience related to or reviewed any literature related to,' 'I have had that happen on more than one occasion in my own anecdotal experience'). And it was at this time that the prosecutor asked: 'Again, the Child Sexual Abuse Accommodation Syndrome is not going to tell you whether or not someone was molested; correct?' Ms. Wolf replied: 'That is actually one of the misuses that I referenced before. You cannot take these five categories and use them as a checklist and say, 'Okay. Three out of five. Majority wins. This child was molested.' [¶] An individual child may display some of these patterns of behavior, and an individual child might display all o[f] them or anywhere in between. It's a way of understanding something that it counterintuitive to adults, but it's not a diagnostic tool or a checklist on any particular case.' Later, Ms. Wolf testified that CSAAS was not 'a generally accepted theory about how child sexual abuse occurs.'

*Patino*, 2018 WL 1100759, at *3.

Only if there are no permissible inferences that the jury may draw from the CSAAS evidence can its admission violate due process. *Jammal v. Van De Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). From the CSAAS evidence in this case, the jury could permissibly infer that G.D., A.D., and E.D. may still be credible even though they did not immediately report the abuse.

Based on the foregoing, I find that the California Court of Appeal's denial of this claim was reasonable and is entitled to AEDPA deference. The court's determination was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Accordingly, Patino is not entitled to habeas relief based on this claim.

---

[2] Patino points out that Wolf interviewed one of the victims in the case, A.D., but he fails to cite clearly established law under AEDPA that would exclude Wolf's testimony.

The circumstances in this case are unlike *Snowden v. Singletary*, 135 F.3d 732, 738 (11th Cir. 1998), where the prosecutor elicited testimony from the CSAAS expert witness about her interview with the victim and, at closing argument, told the jury that the expert concluded "there was no evidence that the girl made up the entire story." Here, the prosecutor emphasized that Wolf would only testify generally and not about the specifics of this case, a point reiterated in the jury instructions.

## II. INEFFECTIVE ASSSTANCE OF COUNSEL

Alternatively, Patino claims that his trial counsel was ineffective for failing to preserve his Fourteenth Amendment challenge to the CSAAS evidence. Pet. 22–25. Respondent argues that Patino's IAC claim is unexhausted because the claim was never presented to the California Supreme Court. Answer 27.

### A. Failure to Exhaust State Remedies

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a State court judgment "shall not be granted unless it appears that [] the applicant has exhausted the remedies available in courts of the State." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Accordingly, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *Id.*; *Rose v. Palmateer*, 395 F.3d 1108, 1110 (9th Cir. 2005) ("Pursuant to 28 U.S.C. § 2254(b)(1)(A), a federal court may not consider the merits of [petitioner's] claim unless he has exhausted all available state court remedies.").

In order to exhaust a claim, the defendant must "fairly present" the factual and legal bases for each claim to the state's highest court. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996). A claim is not "fairly presented" if the state court "must read beyond a petition or a brief . . . in order to find material" that alerts it to the presence of a federal claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (concluding that a petitioner does not "fairly present" an issue for exhaustion purposes when the appellate judge can only discover the issue by reading a lower court opinion in the case). Thus, state prisoners must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review to the state supreme court if that is the state's practice. *O'Sullivan*, 526 U.S. at 845.

Having reviewed Patino's petition for review to the California Supreme Court, I find that Patino did not "fairly present" the factual and legal bases for his IAC claim. *Duncan*, 513 U.S. at

365. His petition for review only raised the issue of the admissibility of CSAAS testimony "when it does not explain or dispel any specific myth or misconception suggested by the evidence and is used to vouch for the credibility of the alleged victim's accusations." Ex. 11 (Appellant's Petition for Review) at 1; *see Kelly v. Small*, 315 F.3d 1063, 1064 (9th Cir. 2003) (finding IAC claim unexhausted where specific instances of ineffectiveness were not found in petition presented to the California Supreme Court), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007). Thus, the state court has not had "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 842.

Patino does not address exhaustion in his traverse, which suggests that he concedes that state court remedies have not been exhausted with regard to this claim. However, while a federal habeas court may not grant an unexhausted claim on the merits under 28 U.S.C. § 2254(b)(2), it may deny such a claim. *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) ("a federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim"). In this circumstance, a federal habeas court reviews the unexhausted claim de novo, not under the deferential standard of review prescribed by AEDPA, 28 U.S.C. section 2254(d). *See Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("De novo review . . . is applicable to a claim that the state court did not reach on the merits") (citing *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003)).

Patino must make two showings in order to prevail on his IAC claim. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687–88. Second, he must establish that counsel's deficient performance prejudiced him, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As noted above, the state appellate court found no constitutional error in the admission of the CSAAS evidence. The Ninth Circuit has recognized the constitutionality of such evidence. Accordingly, counsel's "failure to raise a meritless argument does not constitute ineffective

11

assistance." *Martinez*, 925 F.3d at 1226. Because Patino fails to raise even a colorable federal claim, the unexhausted IAC claim is DENIED.

### CONCLUSION

For the foregoing reasons, Patino's petition for writ of habeas corpus is DENIED. A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Patino may seek a certificate of appealability from the Ninth Circuit. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: September 3, 2020



William H. Orrick
United States District Judge